(95 South. 455)

### CITY OF TALLADEGA et al. v. JACKSON-TINNEY LUMBER CO. (7 Div. 348.)

(Supreme Court of Alabama. Feb. 8, 1923.)

**1. Municipal corporations ⬅️33(2)—Resolution of city council to extend city limits not ineffective because not published; "ordinance or regulation of a general or permanent nature."**

Under Code 1907, § 1070, authorizing municipalities to extend their corporate limits, and section 1071, prescribing the procedure for such extension, a resolution that the public health or public good required certain territory to be brought within the corporate limits was not ineffective because not published in a newspaper, as required by Code 1907, § 1258, in case of ordinances or regulations of a general or permanent nature.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Ordinance.]

**2. Newspapers ⬅️1(1)—Change of paper designated for publication of notice of election to annex territory immaterial.**

Under Code 1907, § 1071, subd. 2, relating to publication of notice of an election to extend the corporate limits of a city, where a probate judge designated a paper for the publication of such notice, the fact that the notice was published in another paper was immaterial.

**3. Municipal corporations ⬅️34—Failure of order declaring result of election to extend corporate limits to contain statement required by statute held not to invalidate proceedings.**

Code 1907, § 1072, relating to extending city limits, and providing that the council shall declare in each resolution and the judge in each order "that such resolution, order, or notice, as the case may be, is passed, given, or entered under the provisions of this article," are directory only, and proceedings for the extension of

city limits are not invalidated for failure of the order declaring the result of the election to contain such a declaration.

**4. Municipal corporations ⬅️34—Extension of corporate limits of city not invalidated by failure to record order for election in minute books; "entered;" "minutes of the court."**

Under Code 1907, § 1071, subd. 2, providing that, after the filing of a resolution to extend the city limits, the probate judge must make and enter an order on the minutes of his court for an election in the territory described, and subdivision 7, providing that after determining the results of the election to be in favor of annexation he shall make and enter an order on the records of his court decreeing the extension, the duties imposed on the judge are ministerial, and where an order for election was made in writing by a probate judge and marked "filed," it was in effect entered on the "minutes of the court" which are written memoranda, and not final records of the court's acts and proceedings, which, by Code 1907, § 5421, subd. 2, must be kept in minutes, and recorded in bound books within three months thereafter, and failure to so record the order in bound books did not invalidate the election held thereunder.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Minutes.]

**5. Municipal corporations ⬅️34—Recording documents purporting to be signed and filed by authorities found in custody of probate court held proper.**

Under Code 1907, § 1071, subd. 2, providing that, after filing of a resolution of a city council to extend city limits, the probate judge must make and enter on the minutes of his court an order for an election in the territory described, and subdivision 7, providing that, after determining the results of the election to be in favor of annexation, the judge shall make and enter an order on the record of his court adjudging and decreeing such extension, where an order calling such an election and an order extending the city limits were found by a successor of the judge who signed them, in the office of the probate court ten years after the election, they were prima facie genuine, and recording them was proper, without relying on Code 1907, § 5430, subd. 7, giving probate judges power to complete minute entries and decrees of the court.

**6. Municipal corporations ⬅️48(2)—Change to commission form of government before recordation of documents relating to territorial extension held not to nullify such extension.**

Under the act authorizing a city to adopt a commission form of government, and providing that the territorial limits of such city shall remain the same as under its former organization, the fact that a city changed its government from the aldermanic to the commission form before the recordation of documents relating to an extension of territory, accomplished under Code 1907, §§ 1070, 1071, eleven years previous to the recordation of the documents, did not nullify the extension of the city limits.

**7. Municipal corporations** ⚖══35—**Private intention of officials or voters securing extension of corporate limits by lawful means does not affect validity of proceeding.**

If a proceeding to extend a city's limits is properly initiated and conducted, and results in an election adopting the extension, the private intention of the participating officials or of the voters themselves does not affect the validity and effectiveness of the proceeding.

Appeal from Circuit Court, Talladega County; A. P. Agee, Judge.

Bill by the Jackson-Tinney Lumber Company against the City of Talladega, and the officials thereof. From a decree overruling demurrer to the bill, respondents appeal. Reversed, rendered, and remanded.

The substance and purpose of the bill of complaint are stated with substantial accuracy and fullness in the brief of counsel for appellee, as follows:

Appellants prosecute this appeal from a decree of the circuit court of Talladega county, sitting in equity, overruling their several demurrers to appellee's original bill, the sole purpose of which was to test the validity of an attempted extension of the corporate limits of the city of Talladega over a definite area (referred to in the bill of complaint as the "extended area"), and the consequent authority and power of the city officials of Talladega to exercise its corporate functions over such extended area.

Appellee's bill avers: That, in November, 1909, the corporate limits of the city of Talladega included only certain described territory, but from January 3, 1920, appellants have exercised, and claimed to have the right to exercise, all of the charter powers of the city over this extended area (specifically described), which claim is by virtue of, and not otherwise than by virtue of, the proceedings incorporated in said bill and made a part thereof. That in the year 1909, S. C. Oliver, the then mayor of the city of Talladega, the population of which was soon to be enumerated by the census enumerator, conceived the idea of ostensibly increasing the population of said city by having a fictitious and bogus election for the extension of its corporate limits, and for the accomplishment of that purpose, and without any purpose to include such area in said limits, the city officials passed a resolution (Exhibit A to the bill) and the voters in such extended area were assured that if they voted affirmatively to become a part of the city of Talladega, the proceedings would never be consummated, or made effective, and to make good such promise, the then probate judge was instructed not to record any of the proceedings, ordering, calling, or relating to said election. That he did not record any of the same. That on his death, he was succeeded in office by S. C. Oliver, who did not record any such papers, nor were any of the same recorded until the third man was probate judge, ten years, or more, after the holding of said election. That on January 3, 1920, certain papers purporting to have been signed by such original probate judge, and by him marked "filed" were for the first time recorded in said office. That the pretended resolution of the city officials for such extension never became effective, for the reason that it was never published in the manner required by law, either before the judge made an order, calling the election, or at any time subsequent thereto. That after the holding of said pretended election, and long before the recordation of any of the papers, the city of Talladega adopted the commission form of government, and thereby established and fixed the corporate limits of the city of Talladega as they then were, and the attempted annexation of said additional territory, not having then become effective, could not thereafter be so consummated as to change the corporate limits and thus override the provisions of the commission government law. That the pretended order made by the judge of probate, calling an election, does not contain a recital of the jurisdictional facts necessary to have been ascertained by him and essential for the records to show. That he did not, within 10 days from the filing of the resolution, make and enter an order upon the minutes of the court, directing an election to be held, and the said pretended order was not recorded for more than 10 years after the pretended election was held, and long after his tenure of office had ceased. That the order, as made, directed notice of the election to be given in Our Mountain Home, and there was such a weekly newspaper published in Talladega at such time, but no notice of such election was ever given therein. That after the holding of said pretended election, no order was made and entered upon the minutes of the probate court for more than 10 years, and long after the term of office of the then probate judge, and long after the tenure of office of his successor, extending the corporate limits. That more than 10 years after all of such proceedings were had, this batch of papers (all of which are exhibits to the bill) was found in the probate office, and without any proof being made of their authenticity or genuineness, or the genuineness of any of the indorsements thereon, or of the identity or correctness of said papers, or any of said indorsements, they were simply recorded in the probate office by still a third probate judge, who was not legally authorized so to do by any one having any authority in the premises, and no proof of any such authority, or of any such papers, was

---

⚖══For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

then made, but they were merely copied on the records.

The bill prays for an injunction restraining appellants from exercising any of their corporate powers of authority over the extended area, and specifically to protect said property of the appellee, which has been levied on for taxes, ánd which property was then without, and never within, the true corporate limits of the city of Talladega. The bill sets out in extenso all of the proceedings hereinabove referred to, and annexes, as exhibits, copies of all of the papers found in the probate office, some of which were, and some of which were not, recorded.

Defendant demurred to the bill of complaint as a whole, and as to each of its specifications, separately and severally, challenging their legal sufficiency.

The appeal is from the judgment of the court overruling the demurrer to the bill.

Knox, Acker, Dixon & Sims, of Talladega, for appellants.

The probate court, having jurisdiction of the subject-matter, is a court of general jurisdiction, and its judgment cannot be collaterally attacked. 15 R. C. L. 869; 86 Ala. 102, 5 South. 587, 11 Am. St. Rep. 21; 185 Ala. 272, 64 South. 553. To order an election, all that is required is a resolution of the council, and Code, § 1258, does not apply. 205 Ala. 621, 88 South. 868. The requirements of Code, § 1072, are directory merely. 167 Ala. 651, 52 South. 461. The entry of a judgment among the files of the court is a clerical or ministerial act. 152 Ala. 141, 44 South. 602; 15 R. C. L. 578; 182 Ala. 376, 62 South. 706; 189 Ala. 307, 66 South. 651; Code 1907, § 5430(7). The statute does not require that the probate judge recite in his order in what newspaper the notice shall be published. Code 1907, § 1071(2).

Harrison & Stringer, of Talladega, for appellee.

The requirement of publication in a newspaper is mandatory, and, unless an ordinance is published in accordance with law, it is void. Code 1907, § 1258; 3 Ala. App. 652, 57 South. 138; 19 R. C. L. 901; 113 Iowa, 30, 84 N. W. 983, 52 L. R. A. 315, 86 Am. St. Rep. 357; 153 Wis. 573, 142 N. W. 510, 46 L. R. A. (N. S.) 427; 250 Pa. 18, 95 Atl. 322, Ann. Cas. 1916B, 48; 20 C. J. 97; 116 Ala. 213, 22 South. 558; 144 Ala. 397, 39 South. 370; 9 R. C. L. 991. The proceeding to obtain an election under a special statute is a new, limited, and special jurisdiction conferred on some particular officer, and requiring for its exercise that the essential facts be affirmatively ascertained and stated of record. 80 Ala. 89; 66 Ala. 119; 168 Ala. 191, 52 South. 756; 145 Ala. 553, 39 South. 910; 28 Cyc. 207; 159 Pa. 43, 28

Atl. 230. Orders and judgments do not become binding until made a part of the minutes of the court. Code 1907, § 1071; 18 Ala. App. 331, 92 South. 84; 102 Ala. 207, 14 South. 738; 121 Ala. 552, 25 South. 735; 152 Ala. 456, 44 South. 554; 20 Ala. 364, 56 Am. Dec. 200; 114 Iowa, 160, 86 N. W. 263; 189 Ala. 307, 66 South. 651; 31 Ala. 207. After adjournment of the term of court, that court has no power to enter up a judgment. 16 Ala. App. 243, 77 South. 81; 4 N. D. 119, 59 N. W. 523, 28 L. R. A. 638; 82 Iowa, 32, 47 N. W. 1015, 31 Am. St. Rep. 458; 144 Iowa, 665, 123 N. W. 338; 156 Ala. 630, 46 South. 854; 200 Ala. 440, 76 South. 372; 32 Minn. 491, 21 N. W. 739. To be effective, the notice published must be in the officially designated medium. 97 Mich. 186, 56 N. W. 347; 201 Ala. 431, 78 South. 809.

SOMERVILLE, J. [1] Section 1070 of the Code authorizes municipalities to extend their corporate limits, and section 1071 prescribes the procedure for the execution of that design. The first step is the passage of—

"a resolution to the effect that the public health or public good requires that the territory, describing it, shall be brought within the limits of the city or town."

The city council of Talladega passed such a resolution, but it is urged that it was ineffective, because it was not published in any newspaper, as required by section 1258 of the Code, in the case of "ordinances or regulations of a general or permanent nature," with the further provision that they "shall take effect from and after their publication." Very clearly, however, the resolution here in question is not an ordinance or regulation of a general or permanent character, intended to be governed by section 1258. It is a resolution merely, designed to set in motion the election machinery provided for the purpose, and, when that purpose is accomplished it is functus officio, in the strictest sense of the term. See Hooper v. Albertville, 205 Ala. 621, 88 South. 868, for an analogous instance of exclusion from the operation of section 1258.

[2] It appears from the bill that the order made by the probate judge under subdivision (2) of section 1071, directed an advertisement of the proposed election in a particular paper, Our Mountain Home, but that (presumptively) it was advertised in another paper instead. This variance was immaterial. The requirement of the statute was met by advertisement in any newspaper published in Talladega, and such an advertisement is not denied by the bill. The case of Deal v. Houston County, 201 Ala. 431, 78 South. 809, cited as to the contrary, is not in point, since it holds merely that the authority of the probate judge to charge the county

for the cost of a newspaper publication of a poll list was exhausted by one publication. Obviously, the name of the newspaper in which this election notice was to be published was of no importance to the voters who were concerned with the election, and there was no reason whatever to prevent the probate judge from using another newspaper than the one designated in his order—a change which may have been advantageous, or even necessary.

[3] Another contention of the bill is adversely disposed by the case of State ex rel. Sigsbee v. Birmingham, 167 Ala. 651, 52 South. 461, as follows:

"The requirements of section 1072, Code 1907, that the council should declare in each resolution and the judge in each order 'that such resolution, order or notice, as the case may be, is passed, given or entered under the provisions of this article,' are directory only and proceedings for the extension of the city limit are not invalidated for a failure of the order declaring the result of the election to contain such quoted provision."

[4] Subdivision (2) of section 1071 of the Code provides:

"Within ten days from the date of the filing of such resolution, the judge of probate must make and enter an order upon the minutes of said court, directing and ordering an election to be held by the qualified electors residing within the territory described, not less than twenty days nor more than forty days from the date of the making of the order. The said judge shall give notice of the holding of such election by publication in a newspaper published within the city or town whose limits are proposed to be extended if a newspaper is published therein."

Subdivision (7) provides:

"The inspectors at the respective voting places must, as soon as the polls are closed, ascertain and certify the results of the election, at their respective voting places, to the judge of probate, and deliver the same to the returning officer, who must at once return the same to the judge of probate, and the judge of probate must canvass the return as made by the inspectors, and if it appears that a majority of the votes cast at the election were 'For Annexation,' the judge shall make and enter an order on the records of the probate court adjudging and decreeing the corporate limits of the city or town to be extended so as to embrace the territory described in the resolution and designated on the plat or map attached to the resolution, and must cause the certified resolution and the map and all orders or decrees or judgments to be recorded in the records in his office, and from the time of the entry of such order such territory shall be a part of and within the corporate limits of the city or town."

The duties enjoined upon the probate judge by subdivisions (2) and (7) are manifestly ministerial and not judicial, as expressly decided of like duties under other statutes.

Green v. Adams, 119 Ala. 472, 24 South. 41; Leigh v. State ex rel., 69 Ala. 261. This is true, notwithstanding the language of subdivision (7) that upon a canvass of the returns, the result so appearing, the probate judge shall make and enter an order on the records of the probate court "adjudging and decreeing the corporate limits of the city or town to be extended," etc. It is of no consequence that such an order is referred to as a judgment or decree, for the order is in fact nothing but an authoritative announcement by a statutory agent of the result of the election, and involves no element of that judicial discretion and determination which are essential to the character of a judgment.

This view of the nature of the orders made by the probate judge in this proceeding renders inapplicable those rules of law which relate to the validity and effectiveness of judgments, and we need not consider that phase of the argument presented in the briefs. The question is therefore upon the validity and effect of ministerial orders which were duly made by the probate judge, and duly filed in the probate court, but which were not entered on the minutes of the court until the lapse of ten years after their filing.

Subdivision (2) of section 1071 provides that the probate judge must "make and enter an order upon the minutes of said court," directing and ordering the election. The minutes of a court are the written memoranda of its acts and proceedings. They are not properly final records, and subdivision (2) of section 5421 of the Code requires the probate judge "to keep minutes of all his official acts and proceedings; and, within three months thereafter, to record the same in well-bound books." We think that when the election order was made in writing by Judge Camp, and "filed" in the court, it was thereby to all intents and purposes entered on the minutes of the court, ready to be recorded in the minute books. The order was effective when it was filed, and the failure to record it within three months could not, by relation back, or otherwise, invalidate the election held thereunder. L. & N. R. Co. v. Perkins, 152 Ala. 133, 44 South. 602. We know of no rule of law or policy which would forbid the recordation of the papers filed in court in this proceeding, at any time thereafter; nor is there any sound reason why any succeeding probate judge should not cause such papers to be recorded.

[5] Subdivision (7) of section 1072, with respect to the final order of the probate judge declaring the result of the election, requires that that order be entered "on the records of the probate court"; and further provides that "from the time of the entry of such order" the territorial extension declared shall become effective. Under this provision it would seem that the mere making and filing of the written order was

not sufficient to make it effective, but that result was postponed until the order was inscribed upon the permanent records of the court in the usual way. However, we need not decide that question, since the instant suit involves the assertion of municipal prerogatives over the added territory only since the due recordation of the final order and other documents on file.

The recordation in question need not be rested upon the authority given to probate judges, under subdivision (7) of section 5430 of the Code, "to complete the minute entries and decrees of the court when the same are incomplete on account of the failure to make the necessary entries at the time when they should have been made." Such a recordation of documents on file, which the law requires or authorizes to be recorded, is a general duty which may be performed at any time; and if the documents purport to have been signed and filed by the proper officials, and are found in the custody, and among the records, of the probate court, they are to be regarded, prima facie, as genuine, and the burden is upon him who denies their genuineness to plead and prove that contention.

The case of Hudson v. Hudson, 20 Ala. 364, 56 Am. Dec. 200, is not opposed to this view, since it was dealing with a document which purported to be a judgment or decree of the probate court, which had never been recorded or entered upon the minutes of the court, and which it was proposed to use as a basis for the rendition of a decree nunc pro tunc. Under the conditions stated, it was held merely that the paper was not self-proving as a record of the court, and hence did not of itself authorize a decree nunc pro tunc.

[6] There is no merit in the contention that Talladega's change from the old aldermanic to the commission form of government in 1920, before the recordation of the documents relating to this territorial extension, prevented and nullified the extension. That theory is based upon a provision of the act which authorizes such a change in the form of government, viz. "the territorial limits of such city shall remain the same as under its former organization." Acts 1911, p. 595, § 6. This means simply that the territorial limits of the city shall not be affected by the change in the form of government, and could not have been intended to deny or affect the right of extension, when asserted and accomplished under sections 1070 and 1071 of the Code.

[7] The contention that the resolution of the city council and the election proceedings that resulted were prompted by the mayor for the sole purpose of inflating the apparent population of the city, and were not undertaken in good faith, and were fictitious and simulated, and are for those reasons invalid, is not entitled to serious consideration. If such a proceeding is properly initiated, and conducted in accordance with the statutes, and results in an election adopting the extension, the private intention of participating officials, or of the voters themselves, can have no influence upon the validity and effectiveness of the proceeding.

We hold that, upon the showing of the bill of complaint, the election was valid, and that the territory in question was legally brought within the corporate limits of the city of Talladega. The result is that the bill is without equity, and the demurrer thereto should have been sustained.

The decree of the circuit court overruling the demurrer will be reversed, and a decree will be here rendered sustaining the demurrer, and the cause remanded for further proceedings.

Reversed, rendered, and remanded.

ANDERSON, C. J., and McCLELLAN and THOMAS, JJ., concur.